[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this foreclosure action, the plaintiff moves to strike the six counts contained in the defendants' counterclaim.
The defendants filed a six-count counterclaim on May 17, 1999, alleging: (1) fraud, misrepresentation and fraudulent inducement, (2) breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing, (3) conspiracy, (4) violations of the Connecticut Unfair Trade Practices Act (CUPTA), (5) intentional infliction of emotional distress, and (6) violation of privacy. The plaintiff filed a motion to strike all six counts of the defendants' counterclaim on February 24, 2000. The plaintiff moves to strike counts one through three on the grounds that they are legally insufficient, count four both because it is barred by the statute of limitations and because it is legally insufficient, count five because it is legally insufficient; and count six on the ground that the conduct which forms the basis for this claim does arise out of the same transaction or occurrence as the underlying foreclosure action, and therefore does not comply with Practice Book § 10-10.
The defendants filed a memorandum in opposition to the motion to strike on May 3, 2000, arguing that (1) the law of the case doctrine does not apply to the counts of the counterclaim that are similar to the special defenses because the underlying principles of the counterclaim are different than those of the special defenses[1] and (2) all of the counts are legally sufficient. The plaintiffs filed a reply brief on August 30, 2000. The defendants filed an additional reply during oral argument on October 2, 2000.
Under Practice Book § 10-39, when a party seeks to contest the "legal sufficiency of any answer to any complaint, counterclaim or cross-complaint, or any part of that answer including any special defense contained therein, the party may do so by filing a motion to strike the contested pleading or part thereof. A motion to strike challenges the legal sufficiency of a pleading. P.B. § 10-39. "Like the demurrer it admits all facts well pleaded." Mingachos v. CBS, Inc., 196 Conn. 91, 108
(1985). Further, the facts as pleaded in the complaint must be construed most favorably towards the plaintiff. Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170 (1988). Accordingly, if the facts provable under the allegations support a cause of action, the motion must fail.
The court is limited "to a consideration of the facts alleged in the CT Page 811 complaint. A `speaking' motion to strike (one imparting facts outside the pleadings) will not be granted." Doe v. Marselle, 38 Conn. App. 360, 364
(1995), rev'd on other grounds, 236 Conn. 845 (1996); see also Cavallov. Derby Savings Bank, 188 Conn. 281, 285-86 (1982). "Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiffs pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied." LilijedahlBros., Inc. v. Grigsby, 215 Conn. 345, 348 (1990). "Although the motion to strike admits all facts well pleaded, it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Citations omitted.) Emerick v. Kuhn, 52 Conn. App. 724, 739
(1999).
In count one of the counterclaim, the defendants allege that the bank fraudulently failed to disclose information to them that would have discouraged them from purchasing the property. Specifically, they allege that the plaintiff failed to disclose both that the plaintiff had foreclosed on the sellers' property and that the property had been appraised at $200,000 although the plaintiff represented to the defendants that the property was worth $600,000. The defendants also allege that the sellers misrepresented their financial history as it pertained to the property and that the plaintiff was privy to this history. The defendants allege that the plaintiff withheld this information from them although the plaintiff knew or should have known that the defendants were relying on the sellers' misrepresentation.
The plaintiff argues that count one is legally insufficient because the plaintiff did not have a duty to disclose information to the defendants because (1) the plaintiff and the defendants did not have a fiduciary relationship, (2) the relationship between a lender and a borrower is an arms length relationship, (3) the information was in the public record easily obtainable by the defendants and (4) the information pertained to another customer of the plaintiff, and the plaintiff is prohibited from disclosing such information under General Statutes § 36a-42. The plaintiff also argues that the defendants unjustifiably relied upon assertions the plaintiff made regarding the mortgage transaction.
The defendants argue in opposition that (1) this mortgage transaction was not an ordinary arm's length transaction because the plaintiff had a hidden purpose, namely elimination of the sellers' debt, (2) the plaintiff deliberately relied upon an inflated appraisal for the purpose of inducing the defendants to borrow from the bank and (3) the plaintiffs argument regarding the public nature of the information fails because the defendants' attorney, in collusion with the plaintiff, failed to provide the defendants with accurate information regarding the status of the property. CT Page 812
"The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." (Internal quotation marks omitted.) RizzoPool Co. v. Del Grosso, 232 Conn. 666, 683, (1995). "[U]nder certain circumstances, there may be as much fraud in a person's silence as in a false statement. . . . Mere nondisclosure, however, does not ordinarily amount to fraud . . . It will arise from such a source only under exceptional circumstances." (Citations omitted.) Egan v. Hudson NutProducts, Inc., 142 Conn. 344, 347 (1955). "[A] failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose." (Internal quotation marks omitted.) Olson v. AccessoryControls Equipment Corp., 254 Conn. 145, 180 (2000).
"Generally there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer."Southbridge Associates, LLC v. Garofalo, 53 Conn. App. 11, 19, cert. denied, 249 Conn. 919 (1999). "A fiduciary relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interest of the other. . . . A bank, as a mortgagee lender, may be the fiduciary of the mortgagor borrower when the bank becomes the borrower's financial advisor." (Citations omitted; internal quotation marks omitted.) Id., 18. The defendants do not make such an allegation in the present case.[2]
In this case the defendant's factual allegations to not establish that the parties had anything more than a lender/lendee relationship. Nor do the defendants allege other circumstances which would impose a duty on the plaintiff to disclose information to the defendants. In addition, generally, there is no duty by a bank to provide an accurate appraisal of the property to the borrower in a mortgage transaction. Dubinsky v.Citicorp Mortgage, Inc., 48 Conn. App. 52, 59-60, cert. denied,244 Conn. 926 (1998).
The plaintiff also argues that pursuant to General Statutes § 36a-42, it was prohibited from disclosing the seller's default and the foreclosure proceedings related thereto. General Statutes § 36a-42
provides in pertinent part that: "A financial institution may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person or the financial records are disclosed in response to (1) a certificate signed by the Commissioner of Administrative Services or the Commissioner of Social CT Page 813 Services . . . (2) a lawful subpoena, summons, warrant or court order . . . (3) interrogatories by a judgment creditor or a demand by a levying officer . . . (4) a certificate issued by a medical provider or its attorney . . . or (5) a certificate signed by the Commissioner of Veterans' Affairs. . . ." The defendants have not alleged any facts that would show that the plaintiff was permitted to disclose information regarding the sellers to the defendants.
The plaintiff further argues that count one should be stricken because the defendants could have obtained the information that the plaintiff had foreclosed on the sellers from the public record. The defendants argue that the plaintiff should be estopped from arguing that the defendants did not exercise due diligence in obtaining this information because the defendants attorney colluded with the plaintiff to keep the information from them.
"It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) Connecticut National Bank v. Voog, 233 Conn. 352, 367 (1995). Assuming that the allegations the defendants make regarding the conduct of their attorney is true, the defendants have nonetheless failed to allege facts sufficient to show that they had no other reasonable means of obtaining the information.
For the above reasons, the motion strike count one is granted.
In count two of the counterclaim, the defendants allege that the plaintiffs relationship with the defendants imposed upon the plaintiff a duty to act in good faith and fair dealing and to disclose material facts concerning the transaction and that the plaintiff violated this duty. The plaintiff argues that count two is insufficient because (1) the defendants failed to show that any alleged breach of covenant would lead to a result contrary to the terms of the contract and (2) because this cause of action is premised on the defendants' allegations of fraudulent nondisclosure, this claim is insufficient for the same reasons that count one is insufficient. The defendants argue in opposition that they do state a valid claim for breach of the covenant of good faith and fair dealing because they can show that the contract did not fulfill the reasonable expectation of the parties.
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) Gaudio v. Griffin Health Services Corp., CT Page 814249 Conn. 523, 564 (1999). "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . ." (Internal quotation marks omitted.) Warner v. Konover, 210 Conn. 150,155, 553 (1989). "Essentially, [the covenant of good faith and fair dealing] is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. . . . Conversely, [b]ad faith means more than mere negligence; it involves a dishonest purpose." (Internal quotation marks omitted.) Barber v.Jacobs, 58 Conn. App. 330, 338, cert. denied, 254 Conn. 920 (2000). "The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Eis v. Meyer, 213 Conn. 29, 37 (1989).
In this case, the defendants do not allege that the parties agreement required the plaintiff to notify them of other foreclosures or other appraisals on the property. As noted by the Appellate Court in ruling on this issue, "[i]f [the defendants] wanted notice of any foreclosure, [they] should have negotiated that right with the [plaintiff] at the time of the assignment. Lacking that agreement, there was no legal requirement that the [plaintiff] notify the defendant of the foreclosure. . . ." Bankof Boston v. Scott Real Estate, Inc., 40 Conn. App. 616, 622 n. 3, cert. denied, 237 Conn. 912 (1996). The motion to strike count two is granted.
In count three of the counterclaim, the defendants allege that the plaintiff conspired with its appraiser and the sellers to perpetuate a fraud on the defendants to induce the defendants to purchase the property. The plaintiff moves to strike this count on two grounds. The plaintiff argues that the defendants did not plead sufficient facts to support a conspiracy claim because (1) they merely plead a legal conclusion that a conspiracy occurred and (2) the defendants failed to allege the purpose or objective of such a conspiracy. Second, the plaintiff argues that because this cause of action is based upon fraudulent nondisclosure, it is insufficient for the same reasons that the first count is insufficient. The defendants argue in opposition that they have sufficiently pled all of the elements of a civil action for conspiracy.
The elements of a civil action for conspiracy are: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." Williams v.Maislen, 116 Conn. 433, 437 (1933). Merely alleging that a conspiracy has taken place, without specifically pleading the elements of a conspiracy, does not support a cause of action for civil conspiracy. See Talit v.
CT Page 815Peterson, 44 Conn. Sup. 490, 496-97 (1995).
In the present case, the defendants' civil conspiracy claim is premised on their allegation that the plaintiff conspired with others to perpetuate a fraud on them. To the extent that the unlawful conduct the defendants are relying on is the plaintiffs nondisclosure of information as alleged in count one, this count is insufficient. As discussed by the Connecticut Supreme Court, "[a]n essential element of a civil action for conspiracy is that the alleged conspirators have combined to do a criminal act or an unlawful act or a lawful act by criminal or unlawful means. . . . The illegal acts upon which the plaintiffs rely to establish a civil conspiracy are the very acts which we have already found not to be improper. In the absence of any independent basis for this claim, our discussion of the merits of the underlying claims is dispositive of this claim as well." (Citation omitted; internal quotation marks omitted.)Jones v. O'Connell, 189 Conn. 648, 662 (1983). The motion to strike count three is granted.
In count four of the counterclaim, the defendants contend that the plaintiffs conduct, as previously alleged, constitutes a violation of the Connecticut Unfair Trade Practices Act (CUPTA), General Statutes §42-110b et seq. The plaintiff moves to strike count four on the grounds that (1) the claim is time barred, (2) the claim is not plead with sufficient particularity to allow the plaintiff to evaluate its legal basis and (3) because the claim is based on a theory of fraud by nondisclosure, it is legally insufficient for the same reasons that the first count is insufficient. The defendant argues in opposition that the claim is both legally sufficient and timely.
The plaintiff first argues that the CUPTA claim was not filed within the three year limitation imposed by General Statutes § 42-110g
(f)[3]. The defendants argue that because General Statutes §52-584[4], which imposes time limits on when a negligence action, allows counterclaims to be filed at any time before the pleadings are closed, and the counterclaim was plead before the pleadings in this case were closed, this counterclaim is not barred by limitations. The defendants also argue that the claim is not time barred because the CUPTA violation occurred when the foreclosure claim was filed and not when the nondisclosure occurred.
Generally, "[a] claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike." Forbes v. Ballaro, 31 Conn. App. 235, 239
(1993). "In two limited situations, however, [the court] will allow the use of a motion to strike to raise the defense of the statute of limitations. . . . The second is where a statute gives a right of action CT Page 816 which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right — it is a limitation of the liability itself as created, and not of the remedy alone." (Citation omitted; internal quotation marks omitted.) Id., 239-40. A CUPTA claim falls within this second exception. Bridgeways Communications Corp. v. Time Warner, Inc., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 050619 (September 4, 1998, Flynn, J.); see also Capitol WestAssociates L.P. v. Southern New England Telephone Co., Superior Court, judicial district of Hartford/New Britian [Britain] at Hartford (Housing Session), Docket No. 5337 (July 1, 1996, DiPentima, J.).
As to the defendants first argument, the operative statute of limitations for CUPTA claims is General Statutes § 42-110g (f) and not § 52-584. Willow Springs Condominium Assn., Inc. v. Seventh BRTDevelopment Corp., 245 Conn. 1, 45-46 (1998).[5] Section 42-110g (f) requires that CUPTA actions may not be brought more than three years after a CUPTA violation occurs. Id. In this case, the conduct that forms the basis for this cause of action is the plaintiffs nondisclosure of information relating to the previous foreclosure, the first appraisal, and the financial circumstances of the sellers of the property. According to the counterclaim, this conduct occurred in 1991, or eight years before the defendants filed their counterclaim. A CUPTA violation occurs when the misrepresentation was made and not at any other time. See Fichera v.Mine Hill Corp., 207 Conn. 204, 213 (1988). Accordingly, the motion to strike count 4 is granted.
In count five of the counterclaim, the defendants allege a claim for intentional infliction of emotional distress. The plaintiff moves to strike count five on the grounds that (1) the defendants fail to allege that the plaintiff engaged in extreme and outrageous conduct, a necessary element of a claim for intentional infliction of emotional distress and (2) because this the claim is based on fraud by nondisclosure, this claim is insufficient for the same reasons that the first claim is insufficient. The defendants argue in opposition that their allegations of a CUPTA violation amount to extreme and outrageous conduct necessary to support an intentional infliction of emotional distress claim.
Generally, to state a claim for intentional infliction of emotional distress, the defendants must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the [actor's] conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the [defendants] was severe." (Internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66, 101
CT Page 817 (1997). Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Internal quotation marks omitted.) Appleton v.Board of Education, 254 Conn. 205, 210-11 (2000). "Whether [an actor's] conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Citation omitted.) Id., 210.
In the present case, the defendants' claim is premised on their contention that the plaintiff made misrepresentations to them regarding the value of the property, the prior foreclosure and the sellers' financial status. As previously discussed, however, the defendants fail to allege circumstances which would impose a duty on the plaintiff to disclose this information to them. Thus the defendants fail to allege conduct by the plaintiff that exceeds all possible bounds of decency and therefore do not allege extreme and outrageous conduct. Accordingly, their allegations do not support a claim for intentional infliction of emotional distress. The motion to strike count five is granted.
In count six of the counterclaim, the defendants allege that the plaintiff breached their privacy by revealing their financial information to their attorney, Richard Pomerantz, without their consent. The plaintiff moves to strike count six on the ground that the allegation does not arise out of the same transaction or occurrence as the underlying foreclosure complaint, and therefore violates Practice Book § 10-10. The defendants argue in Opposition that the claim does arise out of the same transaction or occurrence because it relates to the making of the mortgage.
Practice Book § 10-10 provides in relevant part that: "In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiffs complaint." "[I]n a foreclosure action, the transaction at issue is the execution of the note and mortgage and the subsequent default. . . . As such, all counterclaims and cross claims must arise from or relate to the foreclosure action. (Citation omitted; internal quotation marks omitted.) PNC Bank. N.A. v.Slodowitz, Superior Court, judicial district of Waterbury, Docket No. 137057 (July 19, 1999, West, J.).
"An analysis of those cases recognizing . . . counterclaims [to foreclosure actions] suggest[s] that they are proper only when they . . CT Page 818 . attack the note itself, rather than some act or procedure by the mortgagor. . . . Courts have not been receptive to foreclosure defendants who have asserted defenses and counterclaims based on factors outside the note or mortgage. . . ." (Internal quotation marks omitted.) MercantileBank v. Hurowitz, Superior Court, judicial district of New Haven at New Haven, Docket No. 381091 (May 2, 2000, Celotto, J.); see also SouthbridgeAssociates. LLC v. Garofalo, supra, 53 Conn. App. 21; Ocwen Federal Bankv. Stawski, Superior Court, judicial district of New London at New London, Docket No. 552683 (April 25, 2000, Martin, J.) (counterclaim of detrimental reliance based on erroneous information provided by bank did not arise out of same transaction).
In this case, the defendants allege that in 1997, the plaintiff revealed and disclosed the defendants' financial condition without the defendants' permission and in violation of the defendants' right to privacy. These allegations relate to litigation against the defendants' attorney, and do not pertain to the making, validity or enforcement of the note or mortgage. Accordingly, they do not arise out of the transaction at issue in the plaintiffs complaint. The motion to strike count six is granted.
The motion to strike the counterclaim is granted.
DiPentima, J.