## DAVID DUBINSKY *v.* CITICORP MORTGAGE, INC.
### (AC 16790)

Foti, Dupont and Daly, Js.

Argued December 11, 1997—officially released March 10, 1998

*Kerry M. Wisser*, with whom, on the brief, were *Nathan A. Schatz* and *Gail P. Ferris*, for the appellant (plaintiff).

*Matthew D. Gordon*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, David Dubinsky, appeals from the trial court's granting of summary judgment in favor of the defendant, Citicorp Mortgage, Inc. The issue presented in the appeal is whether the trial court properly granted the defendant's motion for summary judgment on the ground that the defendant, a potential lender, was under no duty to supply the plaintiff, a loan applicant, with an accurate appraisal. We affirm the judgment of the trial court.

This is an action for breach of contract arising out of the defendant's alleged failure to supply the plaintiff with an accurate real estate appraisal in connection with a mortgage loan transaction between the parties. The defendant moved for summary judgment, conceding for purposes of the motion that the appraisal was inaccurate. The defendant contends that it was under no duty to supply the plaintiff with an accurate appraisal either under Connecticut law or pursuant to the

agreement between the parties. The trial court agreed and granted the motion.

On or about September 2, 1988, the plaintiff applied to the defendant for a mortgage loan of $168,750 in connection with his proposed purchase of property located in East Hartford. On September 9, 1988, the defendant obtained an appraisal of the property for purposes of justifying the loan. Later that month, the defendant issued a mortgage loan commitment to the plaintiff. A portion of the commitment form informed the plaintiff that pursuant to Public Acts 1987, No. 87-6,[1] he was entitled to receive a copy of the appraisal used by the defendant to support his loan application.[2] Thereafter, the plaintiff signed the commitment and, as security for the loan, granted the defendant a first

[1] Public Acts 1987, No. 87-6, codified at General Statutes § 36a-755, provides in relevant part: "(b) Any financial institution which directly or indirectly imposes a fee on any applicant for an appraisal on real property to secure a mortgage loan shall make available to such applicant at no charge a copy of the appraisal report promptly after the financial institution's receipt of the applicant's written request for a copy of the appraisal report, provided the financial institution receives the written request not later than ninety days after the financial institution has provided the applicant with notice of action taken on the applicant's application or not later than ninety days after the application is withdrawn by the applicant, as applicable.

"(c) Any financial institution which directly or indirectly imposes a fee on any applicant for an appraisal shall either (1) notify such applicant in writing of the availability of a copy of the appraisal report or (2) provide such applicant with a copy of the appraisal report at no charge, such notice or copy to be provided not later than ten days after receipt of the appraisal report, but in any event not later than the date on which the sale of such property is to be consummated.

"(d) Any person who prepares such appraisal report shall not be liable to any person with whom the preparer has not contracted to make such appraisal report for opinions or facts stated in or omitted from such appraisal report, unless such statement or omission results from intentional misrepresentation. . . ."

[2] During oral argument before this court, the parties conceded that the appraisal performed by the defendant to support the plaintiff's loan application was paid for by the defendant. Because the plaintiff was not charged a fee, either directly or indirectly, for the appraisal, § 36a-755 did not obligate the defendant to provide the plaintiff with a copy of the appraisal.

mortgage on the property. In October, 1988, the defendant sent a copy of the appraisal to the plaintiff and, in its transmittal letter, informed the plaintiff as follows: "In compliance with Connecticut Public Act 87-6, we are providing you with a copy of the property appraisal used in connection with your mortgage application to Citicorp Mortgage, Inc. This appraisal was used solely for the purpose of substantiating asset value in support of your application. Information, estimates and opinions furnished to Citicorp and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished Citicorp can be assumed by Citicorp." The plaintiff's signature appears on the transmittal letter confirming his receipt of the document.

In his complaint, the plaintiff alleged that he relied on the defendant's inaccurate appraisal and, as a result, was induced to purchase, invest in and repair the property. In addition, the plaintiff alleged that because of the overvaluation of the property, he received a larger mortgage than he should have. The trial court determined that no genuine issue of material fact existed regarding the plaintiff's claim that the defendant owed him a duty, contractual or otherwise, to supply an accurate appraisal. We agree.

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 450, 627 A.2d 1329 (1993). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather, to determine whether any such issues exist. *Cortes* v. *Cotton*, 31 Conn. App. 569, 575, 626 A.2d 1306 (1993). [I]n deciding a motion for summary judgment,

the trial court must view the evidence in the light most favorable to the nonmoving party. . . . *Johnson* v. *Meehan*, 225 Conn. 528, 535, 626 A.2d 244 (1993). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990)." (Internal quotation marks omitted.) *Warner* v. *Lancia*, 46 Conn. App. 150, 158, 698 A.2d 938 (1997).

Because the trial court rendered judgment for the defendant as a matter of law, "our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995).

The parties do not dispute that the appraisal performed by the defendant did not induce the plaintiff to submit his loan application. In fact, the plaintiff's application was submitted before the defendant ordered the appraisal. Furthermore, it was the plaintiff's application that necessitated the appraisal. The parties also agree that the plaintiff was free to have his own appraisal performed at his own expense. The plaintiff argues, however, that the defendant breached the express terms of their contract by failing to perform an accurate appraisal. The plaintiff claims that the mortgage loan commitment form signed by both parties expressly obligated the defendant to provide the plaintiff with an appraisal of the real estate used to secure the loan and, therefore, the defendant was obligated to perform the appraisal in a skillful manner.

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a

question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . It is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties. . . . When the intention conveyed by the terms of an agreement is clear and unambiguous, there is no room for construction. . . . [A] court cannot import into [an] agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . The circumstances surrounding the making of the contract, the purposes which the parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. . . . It is axiomatic that a party is entitled to rely upon its written contract as a final integration of its rights and duties. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Citations omitted; internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 277–79, 654 A.2d 737 (1995).

The penultimate paragraph of the mortgage loan commitment form provides in relevant part: "Connecticut Public Act 87-6 entitles you to a copy of the property appraisal performed to support your loan application. Citicorp will provide this to you at the closing or sooner if you require it." This language did not create an obligation on the part of the defendant to perform an accurate appraisal for the benefit of the plaintiff. Rather, it clearly and unambiguously informed the plaintiff that he was entitled to receive a copy of the appraisal performed by the defendant for its own benefit in determining

whether to approve the plaintiff's loan application. The defendant fulfilled the express terms of the contract when it provided the plaintiff with a copy of the appraisal.

We conclude, therefore, that pursuant to the express terms of the parties' agreement, the defendant had no duty to perform an accurate appraisal for the benefit of the plaintiff.

The plaintiff next claims that even if the defendant's failure to supply him with an accurate appraisal did not breach the express terms of the contract, such failure breached the contract's implied covenant of good faith and fair dealing. The plaintiff argues that under the circumstances, the defendant had a common-law duty to perform the appraisal with reasonable care, which duty became part of the parties' contract by way of the implied covenant of good faith and fair dealing. The plaintiff reasons that it is the defendant's breach of the implied covenant that gives rise to a cause of action for breach of contract.

Even if we were to assume, arguendo, that the implied covenant of good faith and fair dealing can be used to incorporate a negligence concept, i.e., duty, into the plaintiff's breach of contract claim,[3] we do not agree that the defendant was under a common-law duty to perform the appraisal with reasonable care.

"A duty to use care may arise from . . . circumstances under which a reasonable person, knowing

---

[3] The plaintiff relies on our Supreme Court's decision in *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984), for the proposition that where a party to a contract has a common-law duty, that duty becomes part of the contract as part of the implied covenant of good faith and fair dealing. We do not agree that the *Magnan* case stands for such a proposition. In *Magnan*, the court declined a plaintiff's invitation to apply the implied covenant of good faith and fair dealing to "enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves 'impropriety . . . derived from some important violation of public policy.'" Id., 572.

what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Internal quotation marks omitted.) *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994). "Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff. A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. . . . The final step in the duty inquiry . . . is to make a determination of 'the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results.' " (Citations omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 385–86, 650 A.2d 153 (1994). The determination of whether a duty exists is a question of law. *Jaworski* v. *Kiernan*, 241 Conn. 399, 404, 696 A.2d 332 (1997). "Only if a duty is found to exist does the trier of fact determine whether the defendant violated that duty in the particular instance." *Field* v. *Kearns*, 43 Conn. App. 265, 278, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996).

The record discloses no relationship between the defendant, a potential lender, and the plaintiff, a loan applicant, on which to predicate a duty to perform an accurate appraisal for the benefit of the loan applicant.[4] On the contrary, the transmittal letter that accompanied the copy of the appraisal sent to the plaintiff, which was signed by the plaintiff, clearly indicated that the

---

[4] We note that the parties have not identified, nor have we found, any Connecticut appellate decision specifically addressing whether a lender has a duty of care to a borrower in appraising the borrower's collateral to determine if it is adequate security for a loan.

appraisal was conducted solely for use by the defendant in evaluating the collateral for purposes of making a determination whether to enter into the loan and mortgage transaction. In addition, the transmittal letter contained a clause disclaiming the defendant's liability for information, estimates and opinions contained in the appraisal. Thus, it was not reasonably foreseeable that the plaintiff, in negotiating the purchase of the property, would rely on the appraisal prepared by the defendant for its own benefit. Under the circumstances, the plaintiff should be expected to know that the appraisal was intended to assist the defendant in determining whether to make the loan, and was not intended to ensure that the plaintiff had made a good investment.

We conclude that the record fails to disclose that the defendant was under a statutory, contractual or common-law duty to perform an accurate appraisal for the benefit of the plaintiff. The trial court, therefore, properly rendered judgment for the defendant as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.